```
LODGED
CLERK, U.S. DISTRICT COURT
1/8/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: ___RYO___ DEPTUTY
```

```
FILED
CLERK, U.S. DISTRICT COURT
1/8/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: ___bm___ DEPUTY
```

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0721
     Facsimile: (213) 894-0141
     E-mail:    John.Lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>ANTHONY DAVID RESNICK,<br>  aka "David Anthony Resnick,"<br>  aka "Tony David Resnick,"<br>  aka "David Erez,"<br><br>A Fugitive from the Government of New Zealand. | No. 2:26-mj-00072-DUTY<br><br>COMPLAINT<br><br>FOR PROVISIONAL ARREST WITH A VIEW TOWARD EXTRADITION (18 U.S.C. § 3184); ORDER THEREON<br><br>**(UNDER SEAL)** |

TO:  Honorable Charles F. Eick
     United States Magistrate Judge
     Central District of California

     I, JOHN J. LULEJIAN, being duly sworn, depose and state that I am an Assistant United States Attorney for the Central District of California and act for the United States in fulfilling its obligations to the Government of New Zealand pursuant to the Treaty on Extradition Between the United States of America and New Zealand, U.S.-N.Z., Jan. 12, 1970, 22 U.S.T. 1 (the "Extradition Treaty").

In accordance with Title 18, United States Code, Section 3184, I charge on information and belief as follows:

1. That the Government of New Zealand has requested the provisional arrest of the fugitive, ANTHONY DAVID RESNICK, also known as ("aka") "David Anthony Resnick," aka "Tony David Resnick," aka "David Erez" ("RESNICK" or the "fugitive"), pending extradition, pursuant to Article XI of the Extradition Treaty.

2. That according to the information provided by the Government of New Zealand, RESNICK (DOB: \*\*/\*\*/1969) is wanted by New Zealand so that he may be prosecuted for (1) participating in an organized criminal group in violation of Section 98A(1)(a) of the Crimes Act of 1961; and (2) obtaining a document with intent to defraud in violation of Sections 229(A) and 66 of the Crimes Act of 1961.[1]

3. That on or about February 25, 2005, a District Court Judge of the Auckland District Court issued a warrant for RESNICK'S arrest for each of the offenses. The warrant remains valid and enforceable.

4. That the offenses for which RESNICK's provisional arrest is sought were committed within the jurisdiction of New Zealand and are covered by Article II of the Extradition Treaty.

5. That New Zealand authorities allege that RESNICK and others were part of a criminal organization that fraudulently obtained passports from the Government of New Zealand. According to the authorities, RESNICK and others used the identities of disabled and

---

[1] The United States is seeking a warrant for RESNICK's provisional arrest based only on these charges, but doing so is without prejudice to proceeding on additional charges when New Zealand's formal request for extradition has been received and reviewed by the U.S. Department of State and is presented to the Court.

vulnerable New Zealand citizens who, because of severe handicaps that limited their ability to communicate, were unlikely to have or apply for a New Zealand passport.  To this end, the group unlawfully obtained the personal information of these individuals, which they then used to obtain post office boxes, telephone numbers, and temporary residential addresses in the victims' names.  These accounts and addresses were then used to obtain copies of the victims' birth certificates, which were subsequently submitted as part of fraudulent passport applications in the victims' names and with their personal details, with the intent that the passports would be used by non-New Zealand citizens assuming their identities.

6. That New Zealand presents the following facts, among others, related to the above offenses in support of its request for the provisional arrest of RESNICK:

   a. Between or about 1985 and 1989, RESNICK's mother worked in New Zealand for a company that provided respite care to disabled people.  During that period, she provided respite care to C.R.H., who is severely autistic.  As a result of the ongoing contact between RESNICK's mother and C.R.H., C.R.H.'s mother came to know of RESNICK, but she never met him.  The families eventually lost touch, and in or about late 1999, RESNICK telephoned C.R.H.'s mother and claimed that he was conducting a study and needed to survey families of people with disabilities.  C.H.R.'s mother agreed to the "survey" and answered a wide variety of questions.

   b. Records showed that in or about June 2000, a male purporting to be C.H.R. purportedly resided at an apartment in Kingsland, New Zealand (the "Kingland Apartment") for approximately

1  three weeks.  According to New Zealand authorities, the owner of the
2  specific apartment is a childhood friend of RESNICK.
3          c.   On or about June 22, 2000, New Zealand's Department of
4  Internal Affairs (Births Deaths & Marriages) received a request for
5  the birth certificate of C.H.R.  The Kingland Apartment was listed as
6  the delivery address for the birth certificate.  The Department of
7  Internal Affairs promptly fulfilled this request.
8          d.   On or about June 26, 2000, a male rented a post office
9  box using C.H.R.'s name and was assigned a post office box in
10 Auckland, New Zealand.
11         e.   At or about this time in 2000, RESNICK was the
12 organizer of the Jewish Community Security Group.  On or about
13 June 28, 2000, RESNICK contacted S.H.W., one of the members of the
14 group, and asked him to sign the identifier section of a passport
15 application on behalf of C.H.R. "as a favor."  S.H.W. agreed, even
16 though he had not previously met C.H.R. or the person claiming to be
17 C.H.R.  S.H.W. met RESNICK and a male claiming to be C.H.R. at a
18 café, where S.H.W. completed and signed the identifier section of the
19 passport application.  S.H.W. told authorities that he could tell
20 from speaking to "C.H.R." that he was Israeli.
21         f.   On or about July 3, 2000, the Department of Internal
22 Affairs received a passport application in C.H.R.'s name.  The
23 application package included a copy of C.H.R.'s birth certificate and
24 passport photographs of a male who is not C.H.R.  The delivery
25 address for the passport was identified as the Kingsland Apartment.
26 The emergency contact listed on the application was a fictitious name
27 linked to a prepaid telephone number, which was activated only a few
28

1  months earlier, on or about March 3, 2000.  Payment for the passport
2  was made by money order.
3           g.   New Zealand authorities issued a passport in C.H.R.'s
4  name on or about July 7, 2000.  The authorities never recovered the
5  passport.
6           h.   On or about November 20, 2003, the Department of
7  Internal Affairs received another application for a passport, this
8  time for H.A.B.  Because it was the first passport request for that
9  individual, a staff member conducted routine due diligence.  During
10 the process, staff became concerned about the veracity of the
11 application and contacted New Zealand authorities.
12          i.   The ensuing investigation led to a "sting" operation
13 on or about March 23, 2004, in which New Zealand authorities
14 facilitated and tracked the delivery of H.A.B.'s new passport.
15 During the operation, authorities arrested two individuals:  Eli Cara
16 ("Cara") and Uriel Kelman ("Kelman"), both Israeli citizens.  In or
17 about July 2004, both men pleaded guilty to participating in an
18 organized criminal group and later were sentenced to six months'
19 imprisonment and a $50,000 NZD fine.
20          j.   Records obtained in New Zealand revealed that between
21 or about October 2000 and March 2004, RESNICK regularly contacted
22 Cara by both telephone and email.  Shortly after Cara and Kelman's
23 arrests, New Zealand authorities continued their investigation,
24 targeting other conspirators, including RESNICK.
25          k.   New Zealand authorities determined that the day after
26 the above sting operation, on or about March 24, 2004, at
27 approximately 10:51 a.m., RESNICK contacted Cathay Pacific airlines
28 and booked a flight to Hong Kong that departed at approximately

5

1:25 p.m. that afternoon. RESNICK boarded the flight and fled New Zealand that day, leaving his family behind. Authorities believe RESNICK has not returned to New Zealand since 2004. RESNICK also has not renewed his New Zealand passport since fleeing New Zealand. New Zealand's efforts to locate RESNICK were unsuccessful until December 2025, when it learned that RESNICK might be in the United States.

    7. That based on the foregoing, U.S. law enforcement believes that RESNICK may be found within the jurisdiction of this Court:

        a. On or about August 10, 2025, RESNICK, using the name "David Erez," applied to the Electronic System for Travel Authorization ("ESTA") to the United States:[2]

            i. RESNICK listed his aliases as "Anthony David Resnick" and "Tony David Resnick" and his place of birth as Auckland, New Zealand;

            ii. RESNICK represented that he had a valid Israeli passport (No. ****8415); and

            iii. RESNICK provided a Los Angeles, California, address as the place he will be staying while in the United States.

        b. RESNICK's ESTA application was approved on August 13, 2025.

        c. On or about November 4, 2025, RESNICK entered the United States at Los Angeles International Airport using the above

---

[2] I am informed and believe that ESTA is a U.S. Customs and Border Protection ("CBP") system that determines whether citizens of countries that participate in the Visa Waiver Program are eligible to travel to the United States without a visa for tourism or business. See https://esta.cbp.dhs.gov/esta. According to the U.S. Customs and Border Protection ("CBP") website, Israeli citizens may participate in the Visa Waiver Program. See id.

1  passport, having traveled from Tel Aviv Ben Gurion International
2  Airport on El Al Airlines Flight No. LY5.  At the time of entry, he
3  was authorized to remain in the United States until February 1, 2026.
4          d.   CBP records reveal that on or about January 8, 2026,
5  RESNICK is scheduled to depart Los Angeles International Airport and
6  travel to Tel Aviv Ben Gurion International Airport on El Al Airlines
7  Flight No. LY6.
8       8.   New Zealand provided the photograph accompanying RESNICK's
9  New Zealand driver's license (No. ****0358), dated on or about
10 April 2, 2004, and the photograph from RESNICK's New Zealand passport
11 (No. ****9891), which expired in or about 2013.  I have compared
12 these photographs with the entry photograph of RESNICK taken at
13 Los Angeles International Airport on or about November 4, 2025, and
14 believe that, notwithstanding the differences in time, all three
15 photographs appear to depict the same individual.
16      9.   That the Government of New Zealand has represented that it
17 will submit a formal request for extradition supported by the
18 documents specified in the Extradition Treaty, within the time
19 required under the Extradition Treaty.
20      10.  That RESNICK would be likely to flee if he learned of the
21 existence of a warrant for his arrest.
22      WHEREUPON, complainant respectfully requests that a warrant for
23 RESNICK's arrest be issued, based on probable cause, pursuant to
24 Title 18, United States Code, Section 3184, and the extradition
25 treaty between the United States and New Zealand, so that the
26 fugitive may be arrested and brought before this Court to the end
27 that the evidence of criminality may be heard and considered, and
28 that this complaint and the warrant be placed under the seal of the

7

Court, except as disclosure is needed for its execution, until such time as the warrant is executed.

DATED: This 8th day of January 2026, at Los Angeles, California.

                        Respectfully submitted,

                        TODD BLANCHE
                        Deputy Attorney General

                        BILAL A. ESSAYLI
                        First Assistant United States Attorney

                        IAN V. YANNIELLO
                        Assistant United States Attorney
                        Chief, National Security Division

                        */s/ John J. Lulejian*
                        JOHN J. LULEJIAN
                        Assistant United States Attorney

                        Attorneys for Complainant
                        UNITED STATES OF AMERICA

Subscribed and sworn to by the applicant by telephone on this 8th day of January 2026.

_____
HONORABLE CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE